UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **JULIAN ROLANDO BELETZUY MONZON,** <br><br> **Plaintiff,** <br><br> v. <br><br> **MARTIN J. O'MALLEY,** <br><br> **Defendant.** | No. 24-cv-162-ZMF |

## MEMORANDUM OPINION

Plaintiff Julian Rolando Beletzuy Monzon moves for reversal of Defendant Commissioner of the Social Security Administration's ("SSA") decision denying his application for Disability Insurance Benefits. *See* Pl.'s Mot. J. Reversal ("Pl.'s Mot."), ECF No. 10. Defendant moves for affirmance. *See* Def.'s Mot. J. Affirmance & Opp. Pl.'s Mot. J. Reversal, ECF No. 12. Having considered the parties' submissions and the Administrative Record,[1] and for the reasons set forth herein, the Court will DENY Plaintiff's Motion for Judgment of Reversal and GRANT Defendant's Motion for Judgment of Affirmance.

## I.    BACKGROUND

### A.    Factual Background

Mr. Monzon is a 59-year-old adult male with a seventh-grade education. *See* AR 51, 86. He worked as a cabinet maker until 2020 and was occasionally self-employed between 2020 and 2022. *See* AR 51–52, 54, 188, 199–200. Mr. Monzon alleged that he was disabled beginning on

---

[1] The Administrative Record consists of 58 exhibits, among other documents such as the Transcript of the Oral Hearing and the ALJ's Hearing Decision. *See* ECF No. 6. For ease of reference, citations to the Administrative Record will refer to the "AR" and cite to the consecutive page numbers provided in the lower right-hand corner of each page.

April 28, 2020 due to hypertension, arthritis of the right knee, low vision in both eyes, and a lower back problem. *See* AR 86.

Between November 17, 2020 and April 14, 2021, Dr. Zain Sultan examined Mr. Monzon four times for right knee pain. *See* AR 289–301. Dr. Sultan's examinations indicated the right knee was tender to physical touching, had mild joint swelling, and a torn meniscus, but that Mr. Monzon had "no gait abnormalities." AR 290, 292–93. On February 10, 2021, Dr. Sultan diagnosed Mr. Monzon with bilateral primary osteoarthritis of the right knee. *See* AR 293.

Between August 26, 2021 and May 4, 2023, Colette Knudsen, FNP, examined Mr. Monzon three times for right knee pain. *See* AR 281, 284, 347. FNP Knudsen's examinations revealed "no swelling or discoloration," but tenderness to physical touching over the patella. AR 281, 285, 348. On August 26, 2021, Mr. Monzon had a "mild limp," AR 285, but on September 10, 2021, he had a "normal gait." AR 281. FNP Knudsen noted that Mr. Monzon reported relief from receiving platelet rich plasma injections twice into his right knee. *See* AR 348.

In March 2022, Dr. Ines Alamo examined Mr. Monzon's right knee. *See* AR 366, 400. Dr. Alamo's examinations revealed the presence of bony tenderness and medial collateral ligament laxity, and that Mr. Monzon generally had "[n]ormal range of motion." AR 369, 402.

Dr. Robert A. Sershon subsequently examined Mr. Monzon. *See* AR 319. Dr. Sershon observed mild swelling, tenderness to physical touching at the joint, and a limping gait due to pain. *See* AR 319. Dr. Sershon ordered radiographs of the right knee, which revealed symptoms "consistent with degenerative arthritis of the affected knee." AR 320. Dr. Sershon recommended joint replacement surgery. *See* AR 320–21. Mr. Monzon initially scheduled the surgery, but later canceled it due to issues with insurance and home care. *See* AR 323.

On March 21, 2023, Dr. Sershon opined that Mr. Monzon could rarely lift under ten pounds and would require the option to sit/stand at will. *See* AR 331. He further asserted that Mr. Monzon could balance, stoop, kneel, crouch, crawl, and rotate his head and/or neck "[a]s tolerated" without providing any further specifics. AR 332. Dr. Sershon also opined that Mr. Monzon would be off-task fifteen percent of the workday and would not be able to maintain attention and concentration for more than an hour before requiring a break. *See* AR 330. Despite these limitations, Dr. Sershon asserted that Mr. Monzon would likely be absent from work zero days per month. *See* AR 330.

On May 17, 2023, Lisa E. Knight, DPT, led Mr. Monzon through a physical therapy session. DPT Knight observed that Mr. Monzon could independently move from sitting to standing and could do a full squat, despite a limping gait. AR 446–47. DPT Knight further noted that Mr. Monzon could lift up to twenty-five pounds without pain, and that his strength in his left and right lower extremities was between four-to-five out of five despite experiencing some pain while moving. *See* AR 447, 452. DPT Knight assessed Mr. Monzon's prognosis as "excellent" with further physical therapy. AR 449.

B.   Statutory Framework

The Social Security Act (the "Act") provides disability insurance benefits for "disabled" individuals. 42 U.S.C. § 423(a)(1). The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." *Id.* § 423(d)(1)(A). The impairment must be severe and must render the individual unable to perform both "previous work" and "any other kind of substantial gainful work which exists in the national economy." *Id.* § 423(d)(2)(A); *see* 20 C.F.R. § 404.1505.

3

Whether a claimant is disabled is determined through a five-step process. *See* 20 C.F.R. § 404.1520(a)(4). The claimant bears the burden of proof at each of the first four steps and the SSA bears the burden at step five. *See Butler v. Barnhart*, 353 F.3d 992, 997 (D.C. Cir. 2004) (citing 20 C.F.R. §§ 404.1520, 416.920).

At step one, the claimant must demonstrate he is not presently engaged in "substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(i). If he is, then he is not disabled. *See id.* At step two, the claimant must show that he has a "severe medically determinable" impairment that "significantly limits his physical or mental ability to do basic work activities." *Id.* § 404.1520(a)(4)(ii), (c). If the claimant does not have a severe impairment, then he is not disabled. *See id.* At step three, the claimant must show that his impairment—or combination of impairments—"meets or equals" the criteria of an impairment listed in the SSA's regulations. *Id.* § 404.1520(a)(4)(iii), (d). If the claimant's impairment meets or equals a listed impairment, then he is disabled. *See id.* If the claimant's impairment does not meet or equal a listed impairment, then between steps three and four the ALJ proceeds to determine the claimant's residual functional capacity ("RFC"). *See id.* § 404.1520(a)(4), (e). An RFC is "the most [a claimant] can still do despite [his] limitations," and considers a claimant's "ability to meet the physical, mental, sensory, and other requirements of work." *See id.* § 404.1545(a)(1), (a)(4).

At step four, the ALJ must determine whether, considering the RFC, the claimant can still perform any relevant past work. *See id.* § 404.1520(a)(4)(iv), (f). If he can, then he is not disabled under the Act. *See id.* If the RFC indicates that the claimant cannot engage in past work, then at step five, the ALJ looks to the claimant's RFC, age, education, and work experience to determine if he can perform "other work" in the national economy. *Id.* § 404.1520(a)(4)(v), (g). If the claimant cannot adjust to other work, then he is disabled under the Act. *See id.*

C. <u>Procedural History</u>

On June 14, 2021, Mr. Monzon applied for disability benefits. *See* AR 165. On October 27, 2021, the SSA denied Mr. Monzon's claim. *See* AR 85. On November 3, 2021, Mr. Monzon applied for reconsideration of his application for disability benefits. *See* AR 107. On March 28, 2022, the SSA again denied Mr. Monzon's claim. *See* AR 90. Mr. Monzon timely requested a hearing before an ALJ, which the ALJ held on May 16, 2023. *See* AR 48, 112.

During the May 16, 2023 ALJ hearing, Mr. Monzon testified that while he used knee braces and experienced pain when walking for more than five to ten minutes, he was able to lift twenty pounds without a knee brace, and at least thirty to forty pounds with a knee brace. *See* AR 61, 63, 65. Mr. Monzon further testified that he experienced temporary relief from knee injections, and that he felt relief from his pain medication with no side effects. *See* AR 70. Mr. Monzon reported that he lived alone, did his own cooking, cleaning, and grocery shopping, and could drive or take public transportation. *See* AR 68–69.

During that same hearing, the ALJ also spoke to Vocational Expert ("VE") James Rossi regarding Mr. Monzon's past relevant work and transferrable skills. *See* AR 71–77. VE Rossi classified Mr. Monzon's past work as being a "Cabinet Maker" and a "Maintenance Worker," with both jobs requiring capacity to perform medium levels of exertion. *See* AR 71–73. VE Rossi testified that a person with Mr. Monzon's limitations could not engage in his past work. *See* AR 76. VE Rossi testified that Mr. Monzon had skills such as "operating hand, power and woodworking tools and machines, using measurement, measuring equipment and tools, [and] assembly of products using drawings and prints," that would be transferrable to other work. AR 76. VE Rossi testified that an individual limited to light work, able to sit, stand, and walk for six hours, with only occasional postural changes, and with Mr. Monzon's transferrable skills would

be able to perform the jobs of "Cupboard Builder" and "Hardware Assembler." AR 77. However, VE Rossi testified that such jobs would not be available with a sit and stand at-will requirement, or with a limitation to sedentary work. *See* AR 77, 82.

On June 12, 2023, the ALJ denied Mr. Monzon's claim. *See* AR 26–41. At step one, the ALJ determined Mr. Monzon had "not engaged in any substantial gainful activity since April 28, 2020, the alleged onset date." AR 33. At step two, the ALJ determined that from April 28 to November 16, 2020, Mr. Monzon had "no medically determinable impairments." AR 33. The ALJ then determined that from November 17, 2020 to June 12, 2023, Mr. Monzon had "osteoarthritis and degenerative joint disease of the bilateral knees," which were severe impairments. AR 33.

At step three, the ALJ compared Mr. Monzon's impairments to listing 1.17, which considers if a claimant's history of surgery of a major weight-bearing joint is severe enough to qualify for disability. *See* AR 34; 20 C.F.R. Part 404, Subpart P, App. 1, 1.17. The ALJ also compared Mr. Monzon's impairments to listing 1.18, which considers the severity of the abnormality of a major joint. *See* AR 34; 20 C.F.R. Part 404, Subpart P, App. 1, 1.18. The ALJ ultimately determined that Mr. Monzon did not "have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments." AR 34.

Between steps three and four, the ALJ determined that Mr. Monzon had the RFC to "perform light work as defined in 20 CFR 404.1567(b)" with some limitations. AR 34. Specifically, the ALJ found that Mr. Monzon could "lift, carry, push and pull 20 pounds occasionally and 10 pounds frequently; sit for six hours in an eight-hour workday; stand and walk for six hours in an eight-hour workday; occasionally climb ramps and stairs, climb ropes, ladders, or scaffolds, balance, stoop, kneel, crouch, and crawl." AR 34. In formulating the RFC, the ALJ considered the objective medical evidence, Mr. Monzon's own testimony, and the alleged

symptoms and the extent to which they were consistent with the other evidence. *See* AR 34–38. For example, the ALJ noted that he considered Mr. Monzon's pain while lifting, his difficulties with bending, his pain medication and its side effects, and his potential obesity. *See* AR 38.

The ALJ determined that "while the allegations regarding the nature of [Mr. Monzon's] symptoms are found to be supported within the medical evidence in the file, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." AR 39. The ALJ also found Dr. Sershon's opinion that Mr. Monzon would be off-task fifteen percent of the workday, that he could rarely lift less than ten pounds, that he would need an option to sit and stand at-will, and more, was "not persuasive" because it was "unsupported by a totality of the medical evidence." AR 37. The ALJ reasoned that it was "not consistent with the claimant's own testimony that he was able to lift at least 20 pounds, equivalent to . . . light range work." AR 38. Additionally, the ALJ reasoned that the opinion was "internally inconsistent" because the "severity of symptoms" described conflicted with the doctor's conclusion that "the claimant would not be absent from work as a result of his medical impairments." AR 38.

Based on the ALJ's determination of Mr. Monzon's RFC and the testimony of VE Rossi, the ALJ determined at step four that Mr. Monzon "was not able to perform past relevant work." AR 39. However, at step five, the ALJ determined that when considering Mr. Monzon's age, education, work experience, and RFC, Mr. Monzon had work skills that were "transferable to other occupations with jobs existing in significant numbers in the national economy." AR 40. Specifically, the ALJ noted that Mr. Monzon could transfer his skills to occupations such as cupboard builder and hardware assembler. *See* AR 41. The ALJ thus ruled that Mr. Monzon was not disabled. *See* AR 41.

On December 4, 2023, the SSA Appeals Council denied Mr. Monzon's request for review. *See* AR 1–3. On January 19, 2024, Mr. Monzon filed his complaint. *See* Compl., ECF No. 1. He argues that the ALJ erred in: (1) discounting Dr. Sershon's testimony; and (2) determining the RFC. *See* Pl.'s Statement P. & A. ("Pl.'s Mem.") 7–16, ECF No. 10-1. On January 30, 2024, the parties consented to proceed before a magistrate judge for all purposes. *See* Order 1, ECF No. 5.

## II.     LEGAL STANDARD

A district court sits in what is essentially an appellate role when it reviews the SSA's disability determination, which must be upheld "if it is supported by substantial evidence and is not tainted by an error of law." *Smith v. Bowen*, 826 F.2d 1120, 1121 (D.C. Cir. 1987). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Butler*, 353 F.3d at 999 (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). This standard "requires more than a scintilla, but can be satisfied by something less than a preponderance of the evidence." *Fla. Mun. Power Agency v. FERC*, 315 F.3d 362, 365–66 (D.C. Cir. 2003) (quoting *FPL Energy Me. Hydro LLC v. FERC*, 287 F.3d 1151, 1160 (D.C. Cir. 2002)).

"Substantial-evidence review is highly deferential to the agency fact-finder." *Rossello ex rel. Rossello v. Astrue*, 529 F.3d 1181, 1185 (D.C. Cir. 2008). "An ALJ's credibility determinations, in particular, 'are entitled to great deference.'" *Harrison Cnty. Coal Co. v. Fed. Mine Safety & Health Rev. Comm'n*, 790 F. App'x 210, 212 (D.C. Cir. 2019) (quoting *Sec'y of Labor v. Keystone Coal Mining Corp.*, 151 F.3d 1096, 1107 (D.C. Cir. 1998)). "The reviewing court may neither reweigh the evidence presented to it nor replace the [ALJ's] judgment 'concerning the credibility of the evidence with its own.'" *Goodman v. Colvin*, 233 F. Supp. 3d 88, 104 (D.D.C. 2017) (quoting *Crosson v. Shalala*, 907 F. Supp. 1, 3 (D.D.C. 1995)). However, this deference requires that the ALJ build a "logical bridge" between the evidence and their

conclusions so that the Court may "assess the validity of the agency's ultimate findings and afford a claimant meaningful judicial review." *Lane-Rauth v. Barnhart*, 437 F. Supp. 2d 63, 67 (D.D.C. 2006) (quoting *Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002)).

On review, the "plaintiff bears the burden of demonstrating that the [ALJ's] decision [was] not based on substantial evidence or that incorrect legal standards were applied." *Settles v. Colvin*, 121 F. Supp. 3d 163, 169 (D.D.C. 2015) (quoting *Muldrow v. Astrue*, No. 11-cv-1385, 2012 WL 2877697, at *6 (D.D.C. July 11, 2012)). If the ALJ has applied the correct legal standards and met the substantial evidence threshold, the reviewing court may grant the SSA's motion for an affirmance of the disability determination. *See, e.g.*, *Hicks v. Astrue*, 718 F. Supp. 2d 1, 17 (D.D.C. 2010). If a court finds error in an ALJ's disability determination, it may reverse and remand, requiring the SSA to conduct further proceedings consistent with the law. *See, e.g.*, *Jackson v. Barnhart*, 271 F. Supp. 2d. 30, 38 (D.D.C. 2002).

## III.   DISCUSSION

Substantial evidence supports the ALJ's decision.

### A.   Dr. Sershon's Medical Opinion

An ALJ must "not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)." 20 C.F.R. § 404.1520c(a). "Instead, the ALJ must decide how persuasive [he] finds all medical opinions according to five factors: (1) supportability; (2) consistency; (3) the medical source's relationship with the claimant; (4) specialization; and (5) other factors that tend to support or contradict a medical opinion." *Tiana O. v. Kijakazi*, No. 20-cv-2051, 2023 WL 5348747, at *6 (D.D.C. Aug. 21, 2023) (internal quotation marks omitted).

"The most important factors in the persuasiveness analysis are (1) supportability—that is, how well the medical source supported the opinion with objective medical evidence and supporting

explanations—and (2) the consistency of the opinion with other evidence in the record." *David W. v. Kijakazi*, No. 21-cv-3370, 2023 WL 5035935, at *10 (D.D.C. Aug. 8, 2023) (internal quotation marks omitted). The ALJ is required to "explain how [they] considered the supportability and consistency factors for a medical source's medical opinions . . . in [a claimant's] determination." 20 C.F.R. § 404.1520c(b)(2). The terms supportability and consistency "need not be used in the opinion, provided that there is sufficient explanation for a reviewing court to determine that the ALJ analyzed those factors." *David W.*, 2023 WL 5035935, at *11.

        1.    *Consistency*

To discount an opinion because of its inconsistency with the rest of the medical record, an ALJ need not "provide more detail than citing . . . the contradictory evidence in his report." *Nancy W. v. Kijakazi*, No. 20-cv-2505, 2023 WL 4846769, at *9 (D.D.C. July 28, 2023) (quoting *McGraw v. Berryhill*, No. 17-cv-1011, 2019 WL 4222703, at *4 (D.D.C. Sept. 5, 2019)). An ALJ has sufficiently addressed consistency by noting a doctor's opined limitations are inconsistent with plaintiff's testimony. *See Stephanie G. v. O'Malley*, No. 22-cv-904, 2024 WL 2271821, at *11 (D.D.C. May 20, 2024). Similarly, an ALJ has sufficiently addressed consistency by noting that a doctor's opined limitations were internally inconsistent with the doctor's own findings. *Id.*

Here, the ALJ properly addressed consistency when he noted that Dr. Sershon's opinion was "not consistent with the claimant's own testimony that he was able to lift at least 20 pounds." AR 38. The ALJ also sufficiently addressed consistency when he noted that Dr. Sershon's opinion was "internally inconsistent because [Dr. Sershon] describe[d] a severity of symptoms that [were] not consistent with his conclusion that the claimant would not be absent from work." AR 38. Thus, there is "sufficient explanation for [this] reviewing court to determine that the ALJ analyzed" consistency. *David W.*, 2023 WL 5035935, at *11.

Mr. Monzon argues that his testimony was consistent with Dr. Sershon's opinion. *See* Pl.'s Mem. at 9. However, Dr. Sershon stated that Mr. Monzon could rarely lift less than ten pounds, *see* AR 331, while Mr. Monzon testified that he could lift at least twenty pounds without pain. *See* AR 65. Mr. Monzon asserts that while "Plaintiff testified that he can lift twenty pounds, [] he also described swelling and soreness when he walks for more than about ten minutes," and that such testimony is consistent with Dr. Sershon's opinion. Pl.'s Mem. at 9. Even if the record supports Mr. Monzon's argument that Dr. Sershon's report and Mr. Monzon's testimony are consistent, if there is substantial evidence to support inconsistencies, this Court "must defer to the ALJ's resolution of that evidentiary split." *Melanie A. S. v. Kijakazi*, No. 21-cv-185, 2022 WL 1721196, at *12 (D.D.C. May 12, 2022), *report and recommendation adopted*, 2022 WL 1718987 (D.D.C. May 27, 2022). Indeed, this Court's role is neither to "reweigh the evidence" nor to substitute the ALJ's judgment concerning the credibility of evidence with its own. *Goodman*, 233 F. Supp. 3d at 104. Rather, this Court's role is cabined to determining whether the ALJ's decision is grounded in "substantial evidence and a correct interpretation of the law." *Id.*

Mr. Monzon also argues that the ALJ erred in his consistency analysis by comparing Mr. Monzon's lifting capabilities to light range work. Pl.'s Mem. at 9. Mr. Monzon bases this argument in his belief that the ability to lift twenty pounds is not "equivalent to a light range work restriction." *Id.* First, Mr. Monzon is incorrect: SSA regulations hold that light work "involves lifting no more than 20 pounds at a time," as compared to sedentary work, which "involves lifting no more than 10 pounds at a time." 20 C.F.R. § 404.1567(a), (b). Second, "there is no specific format required for addressing . . . consistency." *David W.*, 2023 WL 5035935, at *11.

For the foregoing reasons, it was not error for the ALJ to point to the differing exertional requirements of light and sedentary work to highlight the inconsistency between Dr. Sershon's

11

opinion and Mr. Monzon's testimony. Because the record provides "sufficient explanation . . . to determine that the ALJ analyzed" consistency, this Court declines to disturb the ALJ's decision on this basis. *Id.* at *11.

2. *Supportability*

As to supportability, an ALJ need only discuss "that [the doctor's] opinion is not well-supported by objective medical evidence." *Kory D. v. Kijakazi*, No. 20-cv-3571, 2023 WL 6538543, at *7 (D.D.C. Oct. 6, 2023). The ALJ satisfied this requirement when he noted that Dr. Sershon's opinion was "unsupported by . . . the medical evidence." AR 37. This was not an overstatement: Dr. Sershon left this portion of the opinion form blank, declining to provide supporting evidence or explanations. *See* AR 330–333. There was nothing here for the ALJ to discuss. Thus, the Court finds that the ALJ sufficiently addressed the factor of supportability when discussing Dr. Sershon's opinion. *See David W.*, 2023 WL 5035935, at *11.

Mr. Monzon also challenges supportability by arguing that the ALJ incorrectly relied on inconsistencies in Dr. Sershon's conclusion that Mr. Monzon would not be absent from work despite his severe limitations. *See* Pl.'s Mem. at 10. Mr. Monzon does not challenge this conclusion by Dr. Sershon, but Mr. Monzon still suggests that he is disabled. *See id.* Mr. Monzon misunderstands the nature of supportability. Whether Dr. Sershon's opinion is internally consistent has no bearing upon supportability. Instead, supportability is about an ALJ discussing "how well the medical source supported the opinion with objective medical evidence." *David W.*, 2023 WL 5035935, at *10 (internal quotation marks omitted). Dr. Sershon's conclusions—consistent or not—were unsupported given his decision to leave that part of the opinion form blank. *See supra*; *Judea L. v. Kijakazi*, No. 22-cv-1879, 2023 WL 6065023, at *5, 9 (D.D.C. Sept. 18, 2023) (holding

12

medical opinion unsupported when nurse "submitted no clinical or objective findings in support of her opinion"). Therefore, the Court declines to disturb the ALJ's decision on this basis.

Thus, the ALJ properly discounted Dr. Sershon's opinion in assessing Mr. Monzon's RFC.

B.  Mr. Monzon's RFC

1.  *Narrative Discussion*

"To provide the requisite logical bridge, [the] narrative discussion . . . must enable the Court to understand the ALJ's route to his conclusion to permit meaningful review." *Johnson v. Kijakazi*, No. 18-cv-2749, 2022 WL 2452610, at *2 (D.D.C. July 6, 2022) (internal quotation marks omitted). "[T]he narrative discussion generally is adequate if the ALJ does not merely list the evidence but also discusses what the evidence shows about the claimant's RFC and explains which evidence he found credible and why." *Id.* (internal quotation marks omitted).

Mr. Monzon argues that "the ALJ simply concluded that 'the findings specified within this [RFC] assessment are consistent with the appropriate medical findings and the overall evidence in the file.'" Pl.'s Mem. at 15 (quoting AR 39). This is not the case. The ALJ detailed how his RFC assessment was based on evidence such as Mr. Monzon's testimony and the medical evidence in the record. *See* AR 38–39; *Bullock*, 2023 WL 5023380, at *7. Specifically, the ALJ discussed Mr. Monzon's pain while lifting objects, his limitations with bending, how his pain medication helped control his symptoms, and even his "arguable obesity." AR 38; *see* AR 34–38. The ALJ tied this evidence directly to the RFC assessment. *See* AR 38–39. Furthermore, the ALJ discussed how his findings of credibility regarding Dr. Sershon's medical opinion and Mr. Monzon's testimony built into the RFC. *See* AR 37–38. Thus, "the ALJ did more than merely list the evidence. The ALJ explained which evidence he found credible and why." *Pinkney v. Astrue*, 675 F. Supp. 2d 9, 17–18 (D.D.C. 2009). By doing so, the ALJ allowed the Court to assess the validity

of the ALJ's findings and afford Mr. Monzon meaningful judicial review. *See id.* at 17. Here, the ALJ built a logical bridge from the evidence to his conclusion. *See Bullock v. Kijakazi*, No. 20-cv-1764, 2023 WL 5023380, at *7 (D.D.C. Aug. 8, 2023) (internal quotation marks and brackets omitted); *see also* AR 37–39. Thus, the ALJ's RFC assessment was supported by substantial evidence and provided a sufficient narrative discussion.

2. *Supporting Medical Opinion*

Mr. Monzon argues that the failure to have the RFC supported by a medical opinion necessarily means that the ALJ was lay interpreting raw medical data. *See* Pl.'s Mem. at 14–15. Mr. Monzon asserts that such lay interpretation is impermissible.[2] *See id.* Mr. Monzon demands the establishment of a rule that an ALJ's RFC lacks substantial evidence without a supporting medical opinion. *See id.* However, courts "do not expressly require an ALJ always to obtain a medical opinion when crafting the RFC." *Higgins v. Saul*, No. 16-cv-27, 2019 WL 4418681, at *9 (D.D.C. Sept. 16, 2019) (concluding it was not error for the ALJ to assess an RFC despite not having a medical opinion analyzing new medical evidence received); *see Kyler v. Berryhill*, No. 16-cv-1271, 2017 WL 10241530, at *6, 10 (D.D.C. Dec. 19, 2017) (noting that the ALJ

---

[2] Mr. Monzon points to out-of-circuit courts which have held that "an RFC determination lacks substantial evidence when it is not supported by any medical opinion." *See id.* (first citing *O'Connor v. Kijakazi*, No. 22-cv-7019, 2024 WL 1485840, at *2 (N.D. Cal. Apr. 4, 2024); then citing *Vernon R. v. O'Malley*, No. 23-cv-825, 2024 WL 1244695, at *2–3 (D. Md. Mar. 22, 2024); then citing *Julie B.-Z. v. Comm'r of Soc. Sec.*, No. 23-cv-535, 2024 WL 1331187, at *3 (W.D.N.Y. Mar. 28, 2024); then citing *Eric D. B. v. O'Malley*, No. 23-cv-474, 2024 WL 1356712, at *12 (M.D. Pa. Mar. 29, 2024); then citing *Brandon K. v. O'Malley*, No. 22-cv-1041, 2024 WL 1331969, at *8 (M.D.N.C. Mar. 28, 2024); then citing *Linda R. v. O'Malley*, No. 21-cv-2068, 2024 WL 1363659, at *4 (N.D. Ill. Mar. 29, 2024); and then citing *Kobrock v. Soc. Sec. Admin.*, No. 23-cv-256, 2023 WL 8370366, at *8 (E.D. La. Dec. 4, 2023)). However, other courts have held that "a medical source statement or formal medical opinion is not necessarily required" where "the record contains sufficient evidence from which an ALJ can assess the [claimant's RFC]." *Monroe v. Comm'r of Soc. Sec.*, 676 F. App'x 5, 8 (2d Cir. 2017) (quoting *Tankisi v. Comm'r of Soc. Sec.*, 521 F. App'x 29, 34 (2d Cir. 2013)). This Court is free to follow these courts,

"discounted" or assigned "little weight" to every medical opinion, but vacating ALJ's decision on different basis); *Bennett v. Saul*, No. 18-cv-1745, 2019 WL 5549815, at *11 (D.D.C. Oct. 27, 2019) (noting that "rejecting" all opinions by not giving them controlling weight does not require reversal); *see also* n.2 *supra*. This is because, the SSI regulations—including on RFC assessments, 20 C.F.R. § 404.1545(a)(3)—make no requirement of obtaining a medical opinion. *See Tankisi*, 521 F. App'x at 33–34 (noting that the regulations say that a case record "*may* contain medical opinions"). Thus, "the Court cannot conclude that the ALJ erred simply by failing to obtain a medical opinion regarding . . . [the] medical evidence." *Higgins*, 2019 WL 4418681, at *9. Nor will the Court adopt Mr. Monzon's requested rule where there is no textual mandate or controlling precedent.

    3. *Development of the Record*

      i. State Agency RFC Determination

"[W]hile the ALJ can request additional examinations, it is axiomatic that the claimant bears the burden of supplying adequate records and evidence to prove their claim of disability." *Bennett*, 2019 WL 5549815, at *10 (internal quotation marks omitted). "[T]he ALJ need not undertake an additional investigation where there is no obvious gap or defect in the administrative record, nor to resolve conflicts whose resolution is immaterial to the ALJ's ultimate determination." *Richmond-Howard v. Saul*, No. 19-cv-2014, 2022 WL 17370228, at *8 (D.D.C. July 25, 2022) (citing *Gurrola v. Astrue*, 706 F. Supp. 2d 78, 85 (D.D.C. 2010)), *report and recommendation adopted sub nom. Richmond-Howard v. Kijakazi*, 2022 WL 17370162 (D.D.C. Aug. 12, 2022).

Mr. Monzon argues that the ALJ should have further developed the record with additional medical examinations or testimony "because the State Agency offered no RFC determination."

Pl.'s Mem. at 12. Mr. Monzon lacks support for this position given that claimants bear the burden of providing adequate records and evidence, and ALJ requests for additional examinations are discretionary. *See Bennett*, 2019 WL 5549815, at *10; *see also Richmond-Howard*, 2022 WL 17370228, at *8. Moreover, the state agency did not reach an RFC determination because of Mr. Monzon's failure to provide medical evidence. *See* AR 88, 93. This was despite numerous attempts by the agency to gather that evidence. *See* AR 88, 93. "[T]he claimant, not the [agency], must be faulted for gaps in the record when the claimant fails to comply with . . . numerous opportunities to supplement the record." *Richmond-Howard*, 2022 WL 17370228, at *8 (citing *Levy v. Astrue*, No. 07-cv-80157, 2008 WL 4753518, at *14 (S.D. Fla. Oct. 28, 2008)). Thus, the ALJ did not err when he declined to further develop the record. *See id.*

          ii.        Mandating Consultative Examinations

The "decision to order a consultative examination is discretionary." *John W. v. Kijakazi*, No. 18-cv-2453, 2022 WL 4245519, at *10 (D.D.C. Sept. 15, 2022) (internal quotation marks omitted). The ALJ "should only require a consultative examination if the evidence as a whole, both medical and nonmedical, is not sufficient to support a decision." *Id.* Therefore, the ALJ only needs to order a consultive examination if there is an "obvious gap or defect in the administrative record." *Richmond-Howard*, 2022 WL 17370228, at *8 (citing *Gurrola*, 706 F. Supp. 2d at 85).

Mr. Monzon argues that the ALJ should have further developed the record with an agency consultative examination. *See* Pl.'s Mem. at 12. Mr. Monzon lacks support for this position given the discretionary nature of consultative examinations. In fact, because the record includes a plaintiff's "treatment notes, test results, related prescriptions, and evaluation charts," the record is adequate. *Johnson v. Colvin*, 197 F. Supp. 3d 60, 77 (D.D.C. 2016) (citing *Rothe v. Astrue*, 766 F. Supp. 2d 5, 13–14 (D.D.C. 2011)); *see generally* AR 269–477. Moreover, Mr. Monzon has pointed

16

to no obvious gap besides the lack of a supporting medical opinion. *See* Pl.'s Mem. at 12–13. However, there is no requirement to have a medical opinion underpinning an RFC. *See supra*. Thus, given that there was substantial evidence in the record to support the ALJ's RFC determination, the ALJ did not err in declining to obtain a consultative examination. *See John W.*, 2022 WL 4245519, at *10.

Thus, substantial evidence, including through a sufficient narrative discussion, supported the ALJ's RFC assessment, which was based upon a sufficient record not in need of supplementation.

### IV.   CONCLUSION

For the foregoing reasons, the Court will DENY Plaintiff's Motion for Judgment of Reversal and will GRANT Defendant's Motion for Judgment of Affirmance. A separate order will issue.

Date: August 15, 2024

_____
ZIA M. FARUQUI
UNITED STATES MAGISTRATE JUDGE